IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO.:  06-175 (CKK) |
| : | |
| v. : | **FILED** |
| : | |
| PERRY P. BIAYEIBO, : | JUN 2 3 2006 |
| : | |
| Defendant. : | NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and defendant Perry P. Biayeibo, with the concurrence of his attorney, Tony Axam, Jr., agree and stipulate as follows:

1. The defendant is charged by Information with one count of Bank Fraud, pursuant to Title 18, United States Code, Section 1344 and Section 2 (Aiding and Abetting)

2. At all relevant times, Bank-Fund Staff Federal Credit Union (hereinafter referred to as "BFSFCU") located at 1750 H Street NW, Washington, D.C., was federally insured by the National Credit Union Administration, an arm of which is the National Credit Union Share Insurance Fund which is used to insure members share accounts at covered credit unions.

3. On or about March 29, 2006 until on or about April 3, 2006, three stolen checks totaling approximately $34,385 were deposited into the account of two BFSFCU members. The joint account belongs to two individuals, whose identities are known to the United States Attorney, a mother and her son (the son is hereinafter referred to as "Individuals #1"). The three stolen checks were courtesy checks issued to three different MBNA Bank credit card holders, none of whom were BIAYEIBO or the other individuals whose actions are discussed in this Information and none of whom had given anyone permission to use the checks. Typically these checks are mailed to credit

card holders to be used for whatever purpose the credit card holder desires. The three checks were returned to BFSFCU from MBNA Bank as they were listed as "stolen."

4. On or about March 29, 2006, a co-worker of Individual #1 at a store in Rockville, Maryland (the co-worker is hereinafter referred to as "Individual #2) approached Individual #1 about cashing checks for a friend named "Pee" who was a Nigerian citizen who could not open a bank account in the United States. Individual #1 agreed to cash the checks in exchange for a percentage of the funds. Individual #2 then gave Individual #1 the first MBNA courtesy check for $9,640 made payable to Individual #1. Individual #2 then took Individual #1's BFSFCU Debit card and Personal Identification number as insurance that Individual #1 would not take all the money. Individual #1 deposited the check in his BFSFCU account at a branch located at 100 Lake Forest Boulevard in Gaithersburg, Maryland.

5. On or about the following day, March 30, 2006, Individual #1 was introduced by Individual #2 to "Pee" (later identified as BIAYEIBO) at a location in Prince George's County, Maryland. The three individuals then traveled to the BFSFCU credit union branch located at 2121 Pennsylvania Ave, N.W., Washington, D.C., to withdraw the funds from the previously mentioned check. BIAYEIBO instructed Individual #1 to withdraw $3,000 in cash and obtain a cashier's check for $4,950 in Individual #1's name. The three individuals then left the Credit Union and traveled to a First Cash Advance located in Washington D.C. Individual #1 entered the First Cash Advance and negotiated the cashiers check. BIAYEIBO then told Individual #1 to keep $1,600 for himself, give $500 to Individual #2, and BIAYEIBO would keep the remaining $2,850. At the end of the meeting, BIAYEIBO gave Individual #1 a second courtesy check from MBNA Bank for $9,895 made payable to Individual #1.

6. On or about April 3, 2006, Individual #1 deposited the second MBNA check into his BFSFCU account in Gaithersburg, Maryland. On or about the next day, April 4, 2006, Individual #1 met BIAYEIBO at the BFSFCU at 2121 Pennsylvania Ave, N.W., Washington, D.C. From the funds available from the deposit of the second MBNA check, Individual #1 withdrew from his account at BFSFCU cash and a cashier's check for $4,200. From those funds, and based on the agreement between them, Individual #1 gave BIAYEIBO $6,895 and kept the remaining $3,000 for himself.

7. On or about later the same day, April 4, 2006, BIAYEIBO had Individual #1 meet him at the White Flint Mall and gave Individual #1 the third MBNA Bank courtesy check made payable to Individual #1 for $14,850. BIAYEIBO instructed Individual #1 to deposit the check into the Gaithersburg, Maryland, shared branch of BFSFCU account, which Individual #1 did.

8. On or about April 6, 2006, Individual #1 contacted BIAYEIBO by telephone. BIAYEIBO then scheduled a meeting with Individual #1 at the BFSFCU at 2121 Pennsylvania Ave N.W., Washington, D.C., to collect the money that Individual #1 owed to BIAYEIBO for the stolen check.

9. On or about the afternoon of April 6, 2006, BIAYEIBO arrived at the intersection of 21 and Pennsylvania Avenue, N.W., Washington, D.C. BIAYEIBO then met with Individual #1 in Individual #1's vehicle that was parked in front of BIAYEIBO's vehicle. In a recorded conversation, BIAYEIBO admitted to writing the MBNA courtesy checks and explained how much money was owed to BIAYEIBO by Individual #1. BIAYEIBO was then confronted by United States Secret Service agents and arrested on unrelated traffic offenses. He did not receive any money from the third stolen check.

10. On or about April 13, 2006, BIAYIEBO was arrested in this matter. At that time, in a pocket of his pants, he had on a sheet of paper the written name of Individual #1, as well as Individual #1's debit card number and related Personal Identification number.

11. Prior to the depositing of the three stolen checks, as discussed above, BIAYIEBO used his cell phone to call MBNA Bank to check available credit limits on the accounts corresponding with the three convenience checks. Each of the three checks was written for an amount just slightly below the available credit limit for the respective account.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
for the District of Columbia
D.C. Bar No. 451058

By: *Daniel P. Butler*
DANIEL P. BUTLER
Assistant United States Attorney
D.C. Bar No. 417718
555 4th Street, N.W., Room 5231
Washington, D.C. 20530
(202) 353-9431
Daniel.Butler@USDOJ.Gov

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Crim. P. 11, after consulting with my attorney, Mr. Tony Axam, Jr., I agree and stipulate to this Statement of Offense.

Date: 06/23/06

Perry P. Biayeibo
Defendant

4

I have discussed this Statement of Offense with my client, Mr. Perry P. Biayeibo. I concur with his decision to stipulate to this Statement of Offense.

Date: 6/23/06

Mr. Tony Axam, Jr.
Attorney for Defendant Perry P. Biayeibo